IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSIAH KUENZI | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| EUROSPORT CYCLES, INC. ET AL | : | NO. 08-3906 |

O'NEILL, J.                                                           June   29th   , 2009

MEMORANDUM

On August 18, 2008, plaintiff Josiah Kuenzi filed a complaint against defendants EuroSport Cycles, Inc., Don Murray d/b/a EuroSport Cycles, Inc., Capital One Auto Finance, Inc. and John Does 1-10.  The complaint alleges that defendants committed:  (I) negligent misrepresentation; (II) fraudulent misrepresentation; (III) violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201-1, et. seq.; (IV) breach of a contract/warranty; (V) conversion; (VI) violations of Articles III and IX of the Uniform Commercial Code; and (VII) violations of the Truth-in-Lending-Act, 15 U.S.C. § 1601, et. seq.  On September 25, 2008, defendant Capital One filed its answer.

On October 9, 2008, Capital One served Kuenzi with a request for admissions.  On November 4, 2008, I entered default judgment against defendant EuroSport.[1]  On November 10, 2008 Kuenzi responded to Capital One's request for admissions.  On December 16, 2008, I entered default judgment against defendant Murray.[2]  On March 13, 2009, Capital One filed a

---

[1] Defendant EuroSport has filed for bankruptcy.  Bankr. D. N.J. 09-11882.

[2] Defendant Murray has filed for bankruptcy.  Bankr. D. N.J. 09-11877.

motion for summary judgment.[3] On May 5, 2009, Kuenzi filed a response conceding withdrawal of counts I, II, IV and V against Capital One. Presently before me is Capital One's motion for summary judgment and Kuenzi's response thereto for the remaining claims against Capital One.

BACKGROUND

Kuenzi is a citizen of Pottstown, Pennsylvania. EuroSports is a corporation incorporated, and with its principle place of business, in Middlesex, New Jersey. Murray, at all relevant times, maintained his place of business in Cleveland, Ohio. Capital One is a corporation incorporated under the laws of Texas with its principle place of business in McLean, Virginia.

Kuenzi asserts that he attempted to purchase a 2003 BMW K1200 LT motorcycle from EuroSport and Murray. Kuenzi asserts that he received a buyer's order for the motorcycle from EuroSport and Murray on October 31, 2007 which stated the purchase price for the vehicle was $7,632.00.

Kuenzi applied to Capital One for financing of the motorcycle. Kuenzi alleges that Murray suggested that Kuenzi apply to Capital One. Capital One provided $7,500 in financing in the form of a "blank check." Kuenzi asserts that he tendered the check to Eurosport on November 4, 2007 in the amount of $7,500 and that Eurosport processed the check on November

---

[3] Kuenzi challenges Capital One's ability to file a motion for summary judgment, claiming that the motion should be stricken as defective. Kuenzi argues that Capital One, by filing a motion for summary judgment, "pertinently waives the right to now move for relief except for arguing Plaintiff's failure to state a claim" pursuant to FRCP 12(g). Rule 12(g), which deals with joining motions, does not support this argument.
  Furthermore, Kuenzi asserts that the documents submitted by Capital One with their motion for summary judgment are inadmissable because Kuenzi has not had the time to fully address these documents. However, in his response to the motion, Kuenzi supplies a number of documents identical to the supposedly inadmissable ones. I will use the documents submitted by Kuenzi in considering Capital One's motion for summary judgment.

6, 2007. Capital One sent a letter and accompanying disclosures regarding the motorcycle financing to Kuenzi dated November 9, 2007. The TILA disclosures listed the following relevant information: the "amount financed," the "finance charge," the "annual percentage rate" and the "total of payments." The total finance charge and the total amount paid were marked as estimates with an asterisk explaining that the "actual amount will vary based on the number of days to the first payment and the actual dates that scheduled monthly payments are received during the life of the loan." Kuenzi alleges that he has never seen several of the documents submitted by Capital One prior to this briefing. Kuenzi asserts that he did not receive the motorcycle.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party moving for summary judgment has the burden of demonstrating that there are no genuine issues of material fact. Id. at 322-23. If the moving party sustains the burden, the

nonmoving party must set forth facts demonstrating the existence of a genuine issue for trial. See Anderson, 477 U.S. at 255. Rule 56(e) provides that when a properly supported motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The adverse party therefore must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion, and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). However, the "existence of disputed issues of material fact should be ascertained by resolving 'all inferences, doubts and issues of credibility against'" the moving party. Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978), quoting Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870, 878 (3d Cir. 1972).

DISCUSSION

This Court has federal question subject matter jurisdiction over plaintiff's TILA claim (count VII) pursuant to 28 U.S.C. § 1331. This Court has subject matter jurisdiction over the state law counts (I-VI) via supplemental jurisdiction pursuant to 28 U.S.C. § 1367[4] or diversity of citizenship pursuant 28 U.S.C. § 1332.[5]

Kuenzi maintains claims alleging a violation of the UTPCPL (count III), a violation of the

---

[4] I may exercise supplemental jurisdiction pursuant to § 1367 if the state claims and the federal claim "derive from a common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). Since all claims arise from the same motorcycle sale, I find that this test is satisfied.

[5] Plaintiff demands "an amount in excess of seventy-five thousand dollars" to satisfy the amount in controversy requirement and plaintiff and defendants are citizens of different states.

UCC Articles III and IX (count VI) and a violation of the TILA (count VII). Capital One argues that no violations occurred under the UTPCPL or the UCC because it was not a party to the sale of the motorcycle. Additionally, Capital One contends that Kuenzi failed to state a claim for the UCC violations. Capital One also argues that no TILA violation is warranted because Capital One's TILA disclosures were in compliance with the statute. As Kuenzi conceded withdrawal of counts I, II, IV and V, I will dismiss these claims.

I.       Count III: UTPCPL Violations

In count III, Kuenzi argues that Capital One violated the UTPCPL because: (1) its alleged agent Murray engaged in misconduct; (2) Capital One was willfully blind to the misconduct; (3) Capital One was intentionally a party to the misconduct; and (4) Capital One's alleged violations of the TILA constitute a *per se* violation of the UTPCPL. Capital One argues that it did not violate the UTPCPL because it was not a party to the motorcycle sale between Kuenzi and Eurosport and Murray. Additionally, Capital One argues that it did not violate the TILA.

A.       Agency Claim

Kuenzi contends that "Murray was either a loan broker agent of Capital One or had a more informal but no less nefarious connection" and that as "[a] principal of its agent, Murray, Capital One is vicariously liable for Murray's misconduct." Capital One alleges that "Capital One had no involvement with the sale of the motorcycle or with [EuroSport and Murray], but merely responded to Kuenzi's request for financing by providing him with a 'blank check' automobile loan, which he could tender to any automobile dealer." Kuenzi concedes that

defendant Capital One was not a party to the motorcycle sale agreement,[6] but maintains that Capital One is still liable under agency theory.

"The basic elements of agency are the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." Scott v. Purcell, 415 A.2d 56, 60 (Pa. 1980), quoting Restatement (Second) of Agency § 1 cmt. b (1958), quotations omitted. Conduct is within the scope of an agency relationship if "(a) it is the kind [the agent] is employed to perform; (b) it occurs substantially within the authorized time and space limits [and] (c) it is actuated, at least in part, by a purpose to serve the master. . . ." Brumfield v. Sanders, 232 F.3d 376, 380 (3d Cir. 2000), quoting Restatement (Second) of Agency § 228. Under Pennsylvania law, "principal[s are] generally not liable for acts committed outside [the] apparent scope of [an agent/employee's] authority unless acts are subsequently ratified." Sheppard v. Aerospatiale, Aeritalia, 165 F.R.D. 449, 452 (E.D. Pa. 1996).

The existence of an agency relationship is a question of fact. Volunteer Fire Co. v. Hilltop Oil Co., 602 A.2d 1348, 1351 (Pa. Super. Ct. 1992). "The burden of establishing agency rests upon the party asserting it." Scott, 415 A.2d at 61 n.8, citing Girard Trust Bank v. Sweeney, 231 A.2d 407, 410 (Pa. 1967). "It is not necessary, however, to furnish direct evidence

---

[6] Kuenzi argues that his response to Capital One's request for admissions is inadmissable because he has not had an opportunity to conduct full discovery. However, Kuenzi has failed to allege, let alone support the claim that his admission that Capital One was not a party to the sales agreement would differ with more extensive discovery, so this admission is admissible. Moreover, he was not required to make such an admission if he believed more discovery was necessary. His argument appears to allege discovery would find agency liability, not that it would alter the fact that Capital One was not a party to the agreement. Moreover, Kuenzi's argument is inconsistent with the withdrawal of other claims involving the sales agreement.

of the specific authority if it can be reasonably inferred from the circumstances of the case. . . ." Id., citing Yezbak v. Croce, 88 A.2d 80, 82 (Pa. 1952).

In this case, Kuenzi claims that, because Murray allegedly directed loan applicants to Capital One, he was a "loan broker agent" of Capital One and Capital One is "vicariously liable" for Murray's "misconduct." Because Kuenzi does not define or explain the term "misconduct" in his complaint or subsequent brief, and because the sole alleged misconduct in Kuenzi's filings is a failure to deliver the motorcycle,[7] I will assume that the term refers to Murray's alleged failure to deliver the motorcycle after accepting payment. Finding Capital One liable for this "misconduct" would require finding both that an agency relationship existed between Murray and Capital One and that the alleged misconduct was within the scope of that agency relationship.

Kuenzi does not imply or allege that the purported loan broker agency relationship extends beyond financing to cover other dealership functions. As the conduct alleged is Murray's alleged failure to provide the motorcycle, regardless of whether the facts on record are enough to imply an agency relationship, this conduct is outside of the alleged agency relationship. While Kuenzi is entitled to all inferences from the facts on record because he is the non-moving party, Ely, 590 F.2d at 66, he does not allege or infer a general agency relationship but rather one limited to the brokerage of vehicle finance loans. Kuenzi admits that "Capital One was not a party to the Agreement for the purchase of the [motorcycle]" but argues that Capital One "financed the Agreement." Kuenzi fails to allege any "misconduct" on the part of Murray in

---

[7] Kuenzi's response also alleges violations of the TILA, which could be considered "misconduct." However this is likely not what "misconduct" implies in this agency claim given that the alleged TILA violations are articulated as a separate violation of the UTPCPL and do not involve the conduct of Murray.

the actual financing for which Capital One could be vicariously liable.  The sole "misconduct" alleged is the failure to deliver the motorcycle.  Kuenzi's attempt to demonstrate vicarious liability for Capital One fails to attribute a motorcycle sale to a company that is not in the business of selling motorcycles.  Murray's alleged actions directing customers to Capital One for financing is conduct separate from the alleged "misconduct" of the vehicle transaction.  This distinction is corroborated by the fact that Capital One issued Kuenzi a "blank check" loan which could be used at any automotive dealership and was not directed to finance the specific transaction or dealership at issue.

Because the alleged "misconduct" is outside the scope of the alleged loan broker agency relationship, and because Kuenzi does not allege that Capital One ratified this conduct, it is outside the scope of the alleged principal's liability.  Kuenzi is incongruously arguing for vicarious liability for an alleged agent's actions that are outside the scope of even the agency relationship alleged.  Thus, I will grant Capital One's motion for summary judgment on this ground.

      B.    <u>Willfully Blind to or Aware of Misconduct Claim</u>

Kuenzi alleges that Capital One violated the UTPCPL because it was "willfully blind to" or "aware of" misconduct.  Kuenzi argues that the UTPCPL prohibits "fraudulent" or "deceptive" practices.  However, Kuenzi does not provide, and I cannot find, a UTPCPL provision that provides a cause of action against a party who was "willfully blind to" or "aware of" a third party's misconduct which violated the UTPCPL.  Because Kuenzi fails to establish that the alleged violation of the UTPCPL is provided for under the law, I will grant Capital One's motion for summary judgment on this ground.

C.   Intentionally a Party to the Misconduct Claim

Kuenzi alleges that Capital One violated the UTPCPL because it was intentionally a party to the misconduct. Capital One asserts, and Kuenzi concedes, that Capital One was not a party to the sale of the motorcycle.

As the term "misconduct" refers to Eurosport and Murray's alleged failure to deliver the motorcycle, Kuenzi vitiated this claim when he admitted that Capital One was not a party to the motorcycle sale agreement. Even independent of Kuenzi's admission, the "blank check" disconnects Capital One from involvement in the alleged "misconduct." The "blank check" could have been used at any number of dealerships. Kuenzi made the decision to use the "blank check" at EuroSport. Kuenzi fails to argue how the issuance of a "blank check" made Capital One intentionally a party to the alleged misconduct of EuroSport and Murray in the sales agreement.

Capital One was not a party to the sales agreement, the "blank check" nature of the loan suggests a distinct separation between the financing and the sale agreement and Kuenzi fails to allege how or offer evidence to substantiate his claim that Capital One was intentionally a party to the alleged misconduct. I will, thus, grant Capital One's motion for summary judgment on this ground.

D.   TILA violation is a UTPCPL Violation *Per Se* Claim

Kuenzi contends that Capital One violated the UTPCPL by violating the TILA.

A TILA violation is not a *per se* violation of the UTPCPL. Instead, "[a] violation of the TILA may constitute a violation of the [UTPCPL]." In re Milbourne, 108 B.R. 522, 544 (Bankr. E.D. Pa. 1989), citing Com. ex. rel. Zimmerman v. Nickel, 26 Pa. D. & C. 3d. 115, 127-31 (Ct.

Com. Pl. Pa. 1983). If a violation of the TILA occurred, then a separate analysis is required to determine if the TILA violation constitutes a violation of the UTPCPL.

Thus, I will deny the motion for summary judgment without prejudice on this ground because, as discussed below, genuine issues of material fact exist regarding the date on which Kuenzi received the required TILA disclosures. If Kuenzi did not receive the TILA disclosure before consummation of the loan it may result in a violation of the TILA and UTPCPL.

As discussed above, I will grant Capital One's motion for summary judgment on all other grounds that plaintiff claims are UTPCPL violations.

## II.   Count VI:  UCC Violations

In count VI, Kuenzi argues that Capital One violated Articles III and IX of the UCC. Capital One argues that it did not violate the UCC because: (1) Kuenzi failed to allege what constituted a violation of the UCC (2) and Capital One was not a party to the motorcycle sale between Kuenzi and Murray and EuroSport. I will consider only Capital One's first argument.

In <u>Kemezsis v. Matthew</u>, the plaintiff alleged that the defendant had "violated the UCC," but the court found that his complaint failed to allege a violation because it lacked "a reference to a specific statute . . . to put [d]efendants on notice of the claims against them." 2008 WL 2468377, at *7 (E.D. Pa. June 16, 2008), <u>citing</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 232 (3d Cir. 2008). "[T]he factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant the type of notice of a claim which is contemplated by Rule 8." <u>Id.</u>

Kuenzi alleges that Capital One violated Articles III and IX of the UCC but does not provide any specific provisions or authorities. Furthermore, Kuenzi does not specify which state's version of the UCC has supposedly been violated. For example, in Pennsylvania, Articles

III (Negotiable Instruments) and IX (Secured Transactions) of the UCC contain a total of fifteen chapters and 138 sections. It is not the job of the Court or defendants to find which sections Kuenzi means to allege. Because Kuenzi failed to provide sufficient detail, his allegation is too vague to defend. Therefore, I will grant Capital One's motion for summary judgment on count VI.

        III.     Count VII: TILA Violation

In count VII, Kuenzi argues that Capital One violated the TILA because: (1) Kuenzi alleges that he did not receive disclosure statements until after he had consummated the loan and (2) the provided TILA disclosure statements were not "clear and conspicuous" pursuant to 15 U.S.C. § 1632(a) and Reg. Z § 226.17(a). However, Capital One claims that it did not violate the TILA because the disclosures it provided satisfied the requirements of TILA both in timing and form.

        A.     Disclosure Statements Sequence

Kuenzi alleges that he did not receive his TILA disclosure statements until after he had consummated the loan by signing the blank check provided by Capital One over to EuroSport. The timing of TILA loan disclosures to a borrower is significant. "Regulation Z" of the Federal Reserve Board requires that "[t]he creditor shall make disclosures before the consummation of the transaction." 12 C.F.R. § 226.17(b). The Court of Appeals for the Fourth Circuit has read this provision in conjunction with § 226.17(a)(1), which states "the creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that consumer may keep," to mean that a lender must provide the TILA disclosures in writing prior to the consummation of the loan when issuing closed-end credit. Polk v. Crown Auto, 221 F.3d 691,

692 (4th Cir. 2000).  "A creditor who fails to comply with TILA in any respect is liable to the consumer . . . regardless of the nature of the violation or the creditor's intent."  Smith v. Fidelity Consumer Discount Co., 898 F.2d 896, 898 (3d Cir. 1990), citing Thomka v. A.Z. Cheverolet Inc., 619 F.2d 246, 249-50 (3d Cir. 1980).  The TILA is strictly construed against lenders and, "once the court finds a violation, no matter how technical, it has no discretion with respect to liability."  Smith 898 F.2d at 898, quoting Grant v. Imperial Motors, 539 F.2d 506, 510 (5th Cir. 1976).

In support of Kuenzi's allegation that he did not receive TILA disclosures until after the consummation of the loan, he provides a copy of the Capital One "blank check" issued to EuroSport from Kuenzi dated November 4, 2007 and processed November 6, 2007.  Capital One has provided a copy of the TILA disclosure statements dated November 9, 2007.  Capital One also provides documentation that appears to have been issued with the "blank check," but fails to argue that the documents satisfy the TILA disclosure requirements.  Additionally, because these disclosures were not dated and Capital One submitted them without explanation and because plaintiff has not had the chance to address them, the documents are not sufficient at this time to support that Capital One fulfilled its TILA duties.

While it is currently unexplained how Kuenzi could have received the "blank check" without also receiving the allegedly attached documents as submitted by Capital One, the potential sequencing issue presented by the evidence presently before me creates a genuine issue of material fact precluding summary judgment at this time.  I will thus deny the motion for summary judgment on this ground without prejudice.

B.     Clear and Conspicuous

Kuenzi argues that, because some of the figures in the TILA disclosures were initially labeled as "estimates," the disclosures "violated the clear and conspicuous proscription" of Regulation Z.  12 C.F.R. § 226.17(a)(1).  However, the TILA was not violated by the use of the "estimates" at issue.  The TILA not only permits but requires that disclosures be labeled "estimate" in certain circumstances such as when accurate information is unavailable.  "If any information necessary for an accurate disclosure is unknown to the creditor, the creditor shall make the disclosure based on the best information reasonably available at the time the disclosure is provided to the consumer, and shall state clearly that the disclosure is an estimate."  12 C.F.R. § 226.17(c)(2)(i).

Kuenzi does not allege that Capital One used estimates in place of available, accurate information and so has not alleged that Capital One's use of an estimate is a violation of the TILA.  The figures listed as "finance charge" and "total amount of payment" were appropriately labeled estimates because their "actual amount [would] vary based on the number of days to the first payment and the actual dates that scheduled monthly payments are received during the life of the loan."  In other words, the total amount of financing charges Kuenzi would pay could changed depending on whether he paid his balance early or late and the figures provided were estimated based upon timely payments of the monthly minimum.  Thus, I will grant Capital One's motion for summary judgment on this ground.

I will therefore grant Capital One's motion for summary judgment on count VII for Kuenzi's claim that Capital One violated TILA by using an estimates disclaimer, but deny Capital One's motion for summary judgment on plaintiff's claim that Capital One violated the

13

TILA by providing disclosure statements after Kuenzi had consummated his loan.

An appropriate Order follows.